# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9488 | **DATE** | 4/15/2003 |
| **CASE TITLE** | LAWRENCE FISHER vs. ST. PAUL INSURANCE COMPANY OF ILL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. The decision of the bankruptcy court is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 17 2003 date docketed | 9 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE FISHER, Trustee of the Estate of Fishman, Merrick, Gennelly, Springer, Klimek, & Anderson, P.C., ) ) ) ) ) Plaintiff-Appellant, ) ) v. ) ) ST. PAUL INSURANCE COMPANY ) OF ILLINOIS, ) ) Defendant-Appellee. ) | Case No. 02 C 9488<br><br>Honorable John W. Darrah |



DOCKETED
APR 17 2003

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of the judgment of the bankruptcy court on November 26, 2002, by Lawrence Fisher, the Trustee of the Estate of Fishman, Merrick, Gennelly, Springer, Klimek & Anderson, P.C. For the reasons that follow, the decision of the bankruptcy court is affirmed.

## BACKGROUND

The Estate of Fishman, Merrick, Gennelly, Springer, Klimek & Anderson, P.C. ("F&M") was an Illinois professional corporation. Gerald Fishman ("Fishman") was a partner at F&M. The Defendant, St. Paul Insurance Company of Illinois ("St. Paul"), is an insurance company which is authorized to do business in Illinois. St. Paul was the issuer of workers compensation policies ("the policies") to F&M.

On February 10, 1999, an involuntary petition for relief was filed under Chapter 7 of Title 11 of the United States Code against F&M. An order for bankruptcy relief was issued on

July 9, 1999; and Lawrence Fisher ("Trustee") was elected trustee.

On October 5, 2001, the Trustee filed an adversary proceeding against St. Paul, alleging that St. Paul breached its contractual obligations pursuant to the policies by refusing to defend or indemnify F&M in connection with an administrative claim and subsequent federal lawsuit by a former F&M employee, Roxanne Rochester ("Rochester"), against F&M and Fishman ("the Rochester Action").

*The Rochester Action*

Rochester filed two charges of discrimination ("the charges") with the Illinois Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") against Fishman and F&M. The charges alleged that Rochester had been employed as an associate attorney from November 13, 1989 until February 9, 1994, when she was constructively discharged. The charges alleged that during her employment, Rochester had been discriminated against because of her sex and retaliated against for refusing Fishman's unwanted sexual advances and for reporting the sexual harassment.

After receiving a Right to Sue letter, Rochester filed a five-count complaint against Fishman and F&M in the United States District Court for the Northern District of Illinois, alleging *quid pro quo* sexual harassment (Count I), hostile working environment sexual harassment (Count II), sex discrimination (Count III), intentional infliction of emotional distress (Count IV), and tortious interference with contractual relationship (Count V). In the complaint, Rochester alleged that during her employment at F&M, Fishman, with F&M's knowledge, consent and approval, deliberately, maliciously and repeatedly sexually harassed her. She further alleged that F&M and Fishman discriminated against her because of and due to her gender.

Rochester alleged that, beginning in late October or early November 1990 and continuing until July 8, 1991, Fishman made repeated sexual innuendoes and advances to Rochester. Specifically, Rochester alleged that Fishman (1) flirted with her; (2) kissed her against her will on more than one occasion; (3) fondled her breast on more than one occasion; (4) masturbated in front of her; (5) put his hand up her skirt; and (6) on July 5, 1991, held her down and forcibly stuck his finger in her vagina. The complaint also alleges that during this time, Rochester repeatedly advised Fishman that his conduct was unacceptable and had to stop and brought Fishman's conduct to the attention of other F&M partners. However, F&M took no steps to curb Fishman's conduct.

The complaint further alleges that after the July 5, 1991 episode, Rochester complained about Fishman's conduct to an attorney at F&M, Scott Porterfield, on two occasions. The complaint alleges that after these complaints and until Rochester's termination, (1) the partners only spoke to her on work-related matters; (2) Fishman and partners closely associated with him did not work with Rochester again, cutting off her professional growth; (3) F&M withheld secretarial, clerk and paralegal services, did not allow her to incur ordinary and customary expenses, and denied her resources that it made available to male associates.

After Rochester filed the charge and the complaint, F&M submitted a claim to St. Paul for coverage. St. Paul denied coverage, stating that (1) the claim was not covered by the policies and (2) even if it was, the employer's liability exclusion applied.

The case went to trial; and a jury verdict was entered against F&M, finding it liable for *quid pro quo* sexual harassment, hostile working environment sexual harassment and unlawful retaliation. The jury awarded Rochester compensatory and punitive damages.

*The Policies*

St. Paul issued the policies to F&M. The policies were in effect for two annual periods, beginning January 1, 1990 until January 1, 1992. The policies provided that: "You are insured if you are an employer named in item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees." (Adversary Compl. Ex. A1, Workers Compensation & Employers Liability Insurance Policy ¶ B.)

The policies also provided that they applied to "bodily injury" by accident or disease subject to certain exclusions. Under the policies, St. Paul had the right and duty to defend at its expense any claim or proceeding or suit brought against F&M for benefits payable by the policies. However, the policies excluded coverage for, among other things, "5. bodily injury intentionally caused or aggravated by" the insured ("Exclusion 5") and "7. damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law". (*Id.* at Pt. 2, § C, ¶¶ 5, 7.) Pursuant to an endorsement, "Part Two (Employers Liability Insurance), C. Exclusion is amended by replacing exclusion 7 with this exclusion. This insurance does not cover: 7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions." (*Id.* at Employers Liability Insurance Endorsement.) This endorsement was part of both policies issued to F&M.

*The Bankruptcy Court Ruling*

In the adversary proceeding, St. Paul moved for summary judgment, arguing that it had no duty to defend or indemnify F&M because (1) Rochester's allegations did not involve bodily injury

-4-

by accident but were the result of intentional conduct by Fishman and F&M and, therefore, excluded from coverage by Exclusion 5 and (2) Exclusion 7 applied because Rochester's claims arose out of Fishman's and F&M's coercion and discrimination.

On November 26, 2002, the bankruptcy court granted St. Paul's motion for summary judgment. The Trustee argued that St. Paul had a duty to defend and indemnify F&M because Rochester's complaint alleged negligent behavior by F&M. The bankruptcy court held that St. Paul had no duty to defend or indemnify F&M because Fishman's and F&M's conduct had not been "accidental". The bankruptcy court also held that, even if the policies covered Rochester's claim against F&M, the exclusion provisions would preclude coverage because Rochester's injuries arose out of the discrimination.

The Trustee then appealed the bankruptcy court's judgment to this Court, raising the following issues for review:

> 1. Whether the Bankruptcy Court erred by concluding that the injury alleged in the underlying complaint did not constitute an "accident" within the meaning of the applicable insurance policies.
> 2. Whether the Bankruptcy Court erred by concluding that Exclusion C7 of the insurance policies, which excluded "damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law," applied to exclude coverage for the claim in the instant circumstances.

(Pl.'s Br. at 5.)

## LEGAL STANDARD

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Herbstein v. Bruetman*, 266 B.R. 676, 681 (N.D. Ill. 2001). The Court reviews the bankruptcy court's factual determinations for clear error. *In re Ratner*, 132 B.R. 728, 730 (N.D. Ill. 1991).

Summary judgment is appropriate when there remains no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## DISCUSSION

The Trustee argues that while Fishman's conduct toward Rochester may have been intentional as to Fishman, under Illinois law, it was an "accident" as to F&M. Specifically, the Trustee argues that, because Rochester's complaint alleges facts that suggest that F&M was

negligent, Rochester's injuries were not expected or intended by F&M but accidental; and, therefore, St. Paul had a duty to defend and indemnify F&M.

Illinois law controls because the insured risk was in Illinois, F&M is an Illinois resident and St. Paul is an insurance company licensed to do business in Illinois. *Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford*, 152 F. Supp. 2d 1026, 1032 (N.D. Ill. 2001). Under Illinois law, the interpretation of an insurance policy is a question of law. *Mank v. West Am. Ins. Co.*, 249 Ill. App. 3d 827, 830 (1993).

> An insurer's duty to defend its insured is broader than its duty to indemnify. . . . In determining whether an insurer owes its insured a duty to defend, the court must look to the allegations of the underlying complaint in comparison to the relevant insurance policy provisions. . . . If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false or fraudulent. . . . In order for the insurer to justifiably refuse to defend the insured, it must be "clear from the face of the underlying complaint that the allegations fail to state facts" which bring the cause within or potentially within coverage.

*Atlantic Mut. Ins. Co. v. Am. Acad. of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 559-60 (2000) (quoting *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73 (1991).

Under the policies, St. Paul was required to defend and indemnify F&M for "bodily injury caused by accident". The policies do not define "accident". Illinois law provides an "accident" is "'an unforeseen occurrence of untoward or disastrous character' or an 'undesigned sudden or unexpected event.' The natural and ordinary consequences of an act do not constitute an accident." *Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 218 Ill. App. 3d 956, 1009 (1991) (quoting *Aetna Cas. & Sur. Co. v. Freyer*, 89 Ill. App. 3d 617, 619 (1980)). "If the actor expects or intends the injury to follow from the act, there is no coverage under the policy. However, even an intentional act will be covered under the policy language at issue if it causes an unexpected or unintended

result." *Am. Acad. of Orthopaedic Surgeons*, 315 Ill. App. 3d at 561.

> The bankruptcy court held that:
>
> the factual allegations set forth that Rochester's complaint contends that F&M engaged in an intentional pattern of misconduct and discrimination against her.
> Rochester detailed deliberative action taken by F&M once it was made fully aware of Fishman's sexual harassment toward her.
> Rochester further alleged that F&M did not take any corrective action, but instead condoned the harassment and participated in a scheme of retaliation against her. This conduct was intentional on the part, not only of Fishman, but also F&M. Therefore, these actions cannot be seen as accidental.

(Tr. at 7 ll. 20-25, 8 ll. 1-8.)

In *West American Insurance Co. v. Vago*, 197 Ill. App. 3d 151 (1990), the court considered an exclusionary provision that excluded from coverage bodily injury that was expected or intended by the insured. The insured had sexually assaulted a waitress who later filed a tort action against him. The *Vago* court held that the insurer had no duty to defend the insured because the waitress's injuries were expected or intended by the insured and, thus, not accidental, reasoning that since the complaint alleged that the insured "deliberately sexually assaulted the waitress" it was not "conceivable that [the insured] would not have reasonably anticipated the injuries to the waitress allegedly resulting from his conduct." 197 Ill. App. 3d at 137.

From the allegations in Rochester's complaint it is clear that Rochester's injuries were the expected or intended result of F&M's actions. Rochester's complaint alleged that "F&M was aware of Fishman's abusive and illegal conduct but failed to take any corrective action"; "F&M orchestrated a campaign of retaliation against her"; "F&M and [a partner at the firm] had done nothing to stop the retaliation, the discrimination and to work for or intercede on her behalf"; and "F&M, its management and employees . . . knew that Fishman was engaged in a course of

impermissible conduct, illegal harassment and subsequent retaliation toward Rochester, but F&M failed to take any corrective action and in fact participated in and facilitated retaliation after she complained about Fishman." (Adversary Compl. Ex. B ¶¶ 12, 13V, 13MM, 16.) Rochester's complaint further alleged that F&M withheld services and resources, refused to give her assignments and projects, interfered with her professional relationships at the firm and treated her differently than male employees solely because of her sex. (*Id.* ¶ 29.) It is inconceivable that F&M would not have expected Rochester's injuries to result from its alleged conduct.

The Trustee also argues that the bankruptcy court erred because allegations of negligence invoke the duty to defend. The Trustee relies on *Wilkin Insulation Co.*, 144 Ill. 2d at 79, for the proposition that, although a complaint alleges intentional conduct, if it also alleges a theory of recovery sounding in negligence it does not allege that the insured expected or intended the injury. Count III of Rochester's complaint alleges that under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, F&M "had a duty to refrain from" creating or maintaining an offensive and hostile working environment for Rochester due to Fishman's persistent sexual advances and lewd comments and treating Rochester differently on the basis of sex. (Adversary Compl. Ex. B ¶¶ 25, 30.) The Trustee argues that these allegations indicate that F&M was negligent and that, therefore, Rochester's injuries were "accidental" and covered under the policies.

The bankruptcy court held that, although certain counts used terminology associated with negligence,

> [b]oth counts incorporate the specific factual allegations of the previous counts. According to those allegations, F&M intentionally discriminated against and retaliated against Rochester. This conduct is clearly intentional and not merely negligent or accidental.
> The point to be made here is that the allegation of duty does not imply that

the breach of the duty was merely negligent or accidental. Allegations of a duty do not transform the character of claimed misconduct from intentional to negligence so as to invoke coverage of a policy dealing with accidental injuries.

(Tr. at 8 ll. 18-25, 9 ll. 5) (citing *Atlantic Mut. Ins. Co. v. Am. Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552 (2000); *West Am. Ins. Co. v. Vago*, 197 Ill. App. 3d 151 (1990)).

The *Vago* court held the insurer had no duty to defend, reasoning that:

While count V of the tort complaint uses terminology generally associated with negligence, speaking of [the insured's] 'duty to act with due care' and his alleged 'breach of said duty,' that count incorporates the specific factual allegations of the other four counts. According to these allegations, [the insured sexually assaulted the waitress]. Such a course of conduct is clearly intentional and not merely negligent or accidental. Furthermore, if [the insured] engaged in such conduct, he would have been consciously aware that he was practically certain to cause emotional injuries to the waitress.

197 Ill. App. 3d at 137. In *American Academy of Orthopaedic Surgeons*, that court held that the insured expected the injuries to result because "the injuries suffered by the underlying plaintiffs occurred as a direct result of surgically implanting . . . devices in violation of FDA regulations." 315 Ill. App. 3d at 565.

Similarly, here, Count III realleged F&M's intentional conduct. F&M's conduct, as alleged, was clearly intended and not merely negligent. Rochester's complaint alleges that her injuries occurred as a direct result of F&M's deliberate conduct in allegedly turning a blind eye to Fishman's alleged misconduct and allegedly retaliating against Rochester. The allegations that F&M owed Rochester a "duty" to take corrective action or not to create a sexually hostile working environment do not sound in negligence but rather are claims for violations of federal laws.

Furthermore, the cases that the Trustee cites in support of his position, *Wilkin Insulation Co.* and *United States Fidelity & Guaranty Co. v. Open Sesame Child Care Center*, 819 F. Supp. 756

-10-

(N.D. Ill. 1993), are distinguishable. In *Wilkin Insulation Co.*, the insurance policies defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions which result in property damage * * * neither expected nor intended from the standpoint of the insured." 144 Ill. 2d at 76 (internal quotation marks omitted). The *Wilkin Insulation Co.* court held that the insurer had a duty to defend because

> [i]n the instant action, the underlying complaints all allege that the asbestos-containing products continuously release toxic asbestos fibers into the air. This continuous release of asbestos fibers constitutes a harmful condition. By virtue of the "continuous or repeated exposure to the condition" of asbestos fiber release, the buildings and their contents became contaminated. It is the continuous exposure of the buildings and their contents to released asbestos fibers which constitutes the "accident," as defined by the insurance policies. This "accident" results in "property damage." Therefore, the "property damage" alleged in the underlying complaints is caused by an "occurrence," as defined within the insurance policies.
> . . .
> We have reviewed the underlying complaints and are unable to find any allegations that Wilkin "expected or intended" to contaminate the buildings and the contents therein with toxic asbestos fibers.
> . . .
> [W]e conclude that the underlying complaints do not allege that Wilkin *expected or intended* to contaminate the buildings and the contents therein with toxic asbestos fibers.

144 Ill. 2d at 77, 78. In *Open Sesame*, the insurance policy contained a definition of occurrence that was identical to the one in *Wilkin Insulation Co.*. 819 F. Supp. 756. In *Open Sesame*, the underlying complaint alleged, among other things, that:

> John Doe was sexually assaulted and abused by [an employee of the insured] . . . during normal hours. . . . [The insured] failed to perform any background check [on the employee] before allowing him to work there. . . . [The insured] was negligent in allowing [the employee] to work there in that it knew or reasonably should have known that [the employee] had a prior history of sexually assaulting an individual.

819 F. Supp. at 758. In *Open Sesame*, the underlying complaint also alleged a claim for intentional infliction of emotional distress. After noting that "an Illinois court would find, as a matter of law,

-11-

that [the employee] intended to injure John Doe when he was sexually abused," the *Open Sesame* court held that the injury was covered under the policy because only the insured's, not the employee's, intentional conduct fell outside the ambit of the insurance policy. 819 F. Supp. at 759, 760. Since the complaint alleged only negligent conduct on the part of the insured, the insurer had a duty to defend the insured. *Open Sesame*, 819 F. Supp. at 760.

Here, as was noted above, Rochester's complaint alleged intentional conduct by the insured, F&M, that caused her injuries. Rochester's complaint fails to state facts that support the conclusion that F&M was negligent or that Rochester's injuries were accidental under the policy. Thus, it is clear from the face of Rochester's complaint that Rochester's injuries were not "accidental" within the meaning of the policy and that the ruling of the bankruptcy court was correct.

The Trustee next argues that the bankruptcy court erred by holding that Exclusion 7 applied to Rochester's claims. Specifically, the Trustee argues that Rochester's damages actually "arose out of" Fishman's sexual battery and other misconduct and not discrimination.

Under Illinois law, "if the insurer relies on an exclusionary provision, it must be 'clear and free from doubt' that the policy's exclusion prevents coverage." *Am. Acad. of Orthopaedic Surgeons*, 315 Ill. App. 3d at 560. Exclusion 7 precluded coverage for "damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law." An endorsement amended Exclusion 7 to preclude coverage for damages arising out of harassment in addition to those arising out of discrimination and coercion.

"Although not ambiguous as a matter of law, the phrase 'arising out of' in an exclusionary clause of an insurance policy should be given a limited interpretation in favor of the insured." *Allstate Ins. Co. v. Smiley*, 276 Ill. App. 3d 971, 978 (1995). Illinois courts have held "arising out

-12-

of" to mean "'originating from,' 'having its origin in,' 'growing out of' and 'flowing from,'" *Maryland Cas. Co. v. Chicago & N. W. Transp. Co.*, 126 Ill. App. 3d 150, 154 (1984) (quoting *W. Cas. & Sur. Co. v. Branon*, 463 F. Supp. 1208, 1210 (E.D. Ill. 1979)), or "[t]o spring up, originate, to come into being or notice . . . or to come into being, to come about: come up: take place." *Smiley*, 276 Ill. App. 3d at 978 (internal quotation marks and citations omitted).

The bankruptcy court held that:

> [i]n this case, the injuries alleged by Rochester arose out of the discrimination. Sex discrimination under Title VII includes sexual harassment, which takes two forms: Quid pro quo [sic] sexual harassment and hostile work environment.
> . . .
> St. Paul asserts properly that Rochester's claims arose out of sexual harassment committed by Fishman and her discharge from F&M based on her refusal to assent to the harassment. The trustee does not refute these arguments.
> Instead, the trustee states that because Rochester's claims arose out of the sexual harassment by Fishman, it is not within the discharge of, coercion of, or discrimination against her.
> The trustee confuses the issue by failing to recognize that sexual harassment is a form of discrimination. Rochester specifically sued F&M under the two theories of sexual harassment that are recognized as forms of discrimination under Title VII and for discrimination under Title VII.
> In addition, in count five, Rochester alleged tortious interference with contractual relationships. This came out of her refusal to submit to harassment. Fishman interfered with her employment relationship with F&M, thereby resulting in her constructive discharge, thus all of her claims arose out of the sexual harassment she endured at F&M and her constructive discharge.
> Hence, the . . . policies' employment related practice exclusions are applicable, and St. Paul had no duty to defend F&M with respect to the underlying litigation.

(Tr. at 10 ll.18-25 to 12 ll. 1-11) (internal citations omitted).

The bankruptcy court's ruling was correct. Rochester's injuries "arise out of" the discrimination. "Sexual harassment is the form of sex discrimination in the terms or conditions of employment that consists of efforts by coworkers or supervisors to make the workplace intolerable

or at least severely and discriminatorily uncongenial to women ('hostile work environment' harassment), and also efforts (normally by supervisors) to extract sexual favors by threats or promises ('quid pro quo' harassment)." *DeClue v. Central Ill. Light Co.*, 223 F.3d 434, 437 (7th Cir. 2000) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998)). Here, Rochester's complaint alleged that Fishman sexually harassed her and that F&M condoned and participated in the creation of a hostile work environment and treated her differently than similarly-situated male associates. Furthermore, Rochester's claims for intentional infliction of emotional distress (Count IV) and tortious interference with contractual relationship (Count V) have their origin in Fishman's and F&M's discriminatory conduct. Count V alleges that as a result of her refusal to submit to Fishman's sexual advances, Fishman interfered with her employment by refusing to work with her and encouraging other partners not to work with her, which resulted in her constructive discharge on February 9, 1994. If not for Fishman's and F&M's discriminatory conduct, Rochester's claims would not have come about. Thus, coverage was precluded under Exclusion 7[1].

Additionally, coverage is precluded by Exclusion 5. Exclusion 5 of the policies precluded coverage for "bodily injury intentionally caused or aggravated by" the insured. As was discussed in greater detail above, Rochester's complaint alleges that F&M acted deliberately to cause her injuries. Therefore, Exclusion 5 also precludes coverage under the policy.

It is clear from the face of Rochester's complaint that the allegations fail to state facts which bring the cause within or potentially within coverage, *see Am. Acad. of Orthopaedic Surgeons*, 315 Ill. App. 3d 560; and the grant of summary judgment in favor of St. Paul was correct. Therefore, the

---

[1]Although the bankruptcy court did not address this issue, it is clear that coverage is also precluded under the endorsement amending Exclusion 7, which expressly excludes coverage for damages arising out of harassment.

-14-

judgment of the bankruptcy court is affirmed.

## CONCLUSION

For the reasons stated herein, the decision of the bankruptcy court is affirmed.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: April 15, 2003